UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FSI ARCHITECTURE, P.C.,

        Plaintiff,

-against-

ACHESON DOYLE PARTNERS
ARCHITECTURE, P.C. and
DAVID C. ACHESON,

        Defendants.

---

ACHESON DOYLE PARTNERS
ARCHITECTURE, P.C. and
DAVID C. ACHESON,

        Third-Party
        Plaintiffs,

-against-

WILLIAM GOTTLIEB MANAGEMENT
CO., LLC,

        Third-Party
        Defendant.

No. 19-CV-6829 (LAP)

OPINION & ORDER

LORETTA A. PRESKA, Senior United States District Judge:

    Before the Court is Third-Party Defendant William Gottlieb Management Co., LLC's ("WGM") motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]  Third-Party

---

[1] (See Notice of Mot. ("WGM MTD"), dated Mar. 19, 2021 [dkt. no. 39]; see also Mem. of Law in Supp. of Third-Party Def.'s Mot. to Dismiss by William Gottlieb Management Co., LLC ("WGM Br."), dated Mar. 17, 2021 [dkt. no. 40]; Reply Mem. Of Law in Supp. of Third-Party Def.'s Mot. to Dismiss by William Gottlieb Management Co., LLC ("WGM Reply Br."), dated Apr. 23, 2021 [dkt. no. 47].)

Plaintiffs Acheson Doyle Partners, P.C. and David C. Acheson ("Acheson") (collectively, "ADP") oppose the motion.[2]  For the reasons below, the motion to dismiss is DENIED.

I. **Background**

Prior to 2017, WGM retained Plaintiff FSI Architecture, P.C. ("FSI") to provide architectural services for restoration work at certain properties in which WGM owned or had an ownership interest (the "Properties").[3]  In rendering its services for WGM, FSI prepared drawings, plans, and architectural designs for the Properties (the "Materials"), which, prior to December 2016, FSI published with the Building Department ("DOB") and/or the Landmark Preservation Commission ("LPC").[4]  (Am. Compl. ¶¶ 10-11.)

Sometime after December 2016, WGM discharged FSI and hired ADP to continue providing architectural services for

---

[2] (See Defs./Third-Party Pls.' Mem. of Law in Opp'n to Mot. to Dismiss Third-Party Compl. ("Pls. Opp."), dated Apr. 13, 2021 [dkt. no. 45].)
[3] The properties are located at 11 Abingdon Square, New York, NY; 26 West 11th Street, New York, NY; 28 West 11th Street, New York, NY; 753 Washington Street, New York, NY; 220 West 10th Street, New York, NY; 222 West 10th Street, New York, NY; and 345 West 12th Street, New York, NY.  (See First Am. Third-Party Compl. ("Am. Compl."), dated Apr. 9, 2021 [dkt. no 44] ¶ 8.)
[4] The DOB and the LPC are a department and an agency of the City of New York, respectively.

construction and restoration work at the Properties.[5]  (Id. ¶¶ 13-14.)  ADP alleges that WGM affirmatively represented to ADP that WGM and ADP had "legal right, authority, permission and license to use reproductions of the Materials."  (Id. ¶ 16.)

As part of its architectural services for WGM, ADP and WGM entered into an indemnity agreement, dated November 16, 2017 (the "Indemnity Agreement"), which stated in part that WGM:

> shall indemnify, defend, and hold harmless Acheson Doyle Partners Architects, P.C., and their respective successors, assigns and estates (collectively, "ADP") from and against any and all causes of action, damages, including, without limitation, claims, demands, judgments, liens, litigation, liability, penalties, orders, losses, costs, or expenses, including reasonable attorneys' fees (collectively, the "Claims"), which may at any time be asserted by FSI Architecture ("FSI") against ADP in connection with ADP's use of reproductions of FSI's drawings and plans in connection with the following projects located at the following addresses in New York . . . .

(Id. ¶ 20; see also Am. Compl. Ex. B.)  ADP alleges that FSI did not register the Materials with the United States Copyright Office until July 2 and July 3, 2018.  (Id. ¶ 12.)  That same month, FSI sent Matthew Barhydt, AIA, and ADP a cease-and-desist letter, dated July 20, 2018, alleging copyright infringement of the Materials.  (Id. ¶ 22.)  A week later, WGM responded,

---

[5] ADP's architectural services "included, inter alia, the filing of drawings with DOB" and/or LPC on WGM's behalf.  (Id. ¶¶ 15, 17.)  ADP alleges that WGM knew that only one of ADP's licensed architects, such as Acheson, could file drawings with the DOB and/or LPC. (See id. ¶ 17.)

disputing FSI's allegations against ADP. (Id. ¶ 23; see also Am. Compl. Ex. C.)

One year later, FSI filed the main action against ADP asserting copyright infringement. (See Compl. for Copyright Infringement, dated July 23, 2019, [dkt. no. 1].) On January 29, 2021, ADP filed the instant action against WGM asserting breach of contract and indemnification and seeking, pursuant to 28 U.S.C. § 2201, declaratory judgment based on the Indemnity Agreement. (See Third-Party Compl., dated Jan. 29, 2021 [dkt. no. 28].) WGM moved to dismiss the complaint (see WGM MTD; WGM Br.), but ADP amended its complaint as of right. (See Am. Compl.) Third-Party Plaintiffs oppose the motion. (See Pls. Opp. at 1.) The Court treats ADP's First Amended Third-Party Complaint (the "Amended Complaint") as the operative pleading and considered the merits of WGM's motion to dismiss in light of the amendment.

II. **Legal Standards**

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead sufficient facts "to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678

4

(2009).  That "standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Palin v. N.Y. Times Co., 940 F.3d 804, 810 (2d Cir. 2019) (quoting Iqbal, 556 U.S. at 678).  Evaluating "whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Iqbal, 556 U.S. at 679.

When considering a motion to dismiss, the court "accept[s] as true all factual allegations and draw[s] from them all reasonable inferences."  Dane v. UnitedHealthcare Ins. Co., 974 F.3d 183, 188 (2d Cir. 2020).  It is not required, however, "to credit conclusory allegations or legal conclusions couched as factual allegations."  Id. (ellipsis omitted).  "Accordingly, threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Nielsen v. Rabin, 746 F.3d 58, 62 (2d Cir. 2014) (cleaned up).  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  Iqbal, 556 U.S. at 679.

III. **Discussion**

   a. **ADP's Breach of Contract Claim**

The parties do not dispute that the terms of the Indemnity Agreement apply to FSI's claims against ADP in the main action.

5

Rather, the parties contest what triggers WGM's obligation to indemnify ADP—FSI's initiation of the main action or a determination of the merits—and whether the Court can determine the enforceability of the Indemnity Agreement on WGM's Rule 12(b)(6) motion.  WGM contends that the Court should establish its indemnification obligation "at the outset of the litigation based on the allegations against ADP, regardless of the merits."  (See WGM Reply Br. at 6-7.)  ADP opposes WGM's position, arguing that the Court should wait until a determination of the merits to determine WGM's indemnification obligation; as such, ADP contends that enforceability of the Indemnity Agreement cannot be resolved on a motion to dismiss.  (See Pls. Opp. at 14-15.)

WGM asserts that if the Court determines that WGM's indemnification obligation is triggered at the outset of litigation, then it also determines the enforceability of the Indemnity Agreement.  WGM argues that dismissal of ADP's Amended Complaint is proper because the Indemnity Agreement is unenforceable.  (See WGM Br. at 4-5.)  WGM avers that FSI alleges intentional copyright infringement against ADP by seeking a declaratory judgment that ADP "knowingly infringed Plaintiff's Copyrighted Works," (Am. Compl. for Copyright Infringement, dated Sept. 25, 2019, [dkt. no. 17] at 7), when ADP refused to "cease and desist from further acts of copyright

6

infringement and immediately withdraw its infringing copies and/or derivatives of Plaintiff's Copyrighted Works from the" DOB.  (Id. ¶ 24.)  WGM argues that these allegations of intentional copyright infringement render the Indemnity Agreement unenforceable.  (See WGM Br. at 4-5.)  Under New York law, "[i]ndemnification agreements are unenforceable as violative of public policy only to the extent that they purport to indemnify a party for damages flowing from the intentional causation of injury."  Gibbs-Alfano v. Burton, 281 F.3d 12, 21 (2d Cir. 2002) (citation omitted).

ADP opposes WGM's position, arguing that the Indemnity Agreement does not violate New York public policy because intent "is not an element of a cause of action for copyright infringement."[6]  (Pls. Opp. at 9.)  ADP contends that the Court should deny WGM's motion to dismiss because WGM is contractually required to indemnify ADP even if the Court finds ADP liable for copyright infringement without acting willfully.  (Id. at 11.) ADP also argues that the Copyright Act precludes FSI from seeking statutory damages—which considers an infringer's intent— because ADP's alleged infringement commenced after FSI's first

---

[6] "To establish an infringement of a copyright, a plaintiff must show both ownership of a copyright and that defendant copied the protected material without authorization."  Rogers v. Koons, 960 F.2d 301, 306 (2d Cir. 1992); see also Small Bus. Bodyguard Inc. v. House of Moxie, Inc., 230 F. Supp. 3d 290, 303 (S.D.N.Y. 2017).

7

publication of the Materials and before FSI registered the Materials with the United States Copyright Office.  (Id. at 12-13.)  Finally, ADP asserts that willfulness and the enforceability of the Indemnity Agreement are fact specific issues that cannot be resolved on a Rule 12(b)(6) motion.  (See id. at 14.)

   WGM's contention misses the mark.  CBS Corp. v. Eaton Corp., No. 07 Civ. 11344 (LBS), 2010 WL 1375169, at *2 (S.D.N.Y. Mar. 30, 2010) is instructive.  In CBS Corp., plaintiff sued defendant for breach of contract, seeking indemnification for legal fees that it claimed was covered by the parties' indemnity provision.  Id. at *1.  Defendant alleged that it was not liable for nonpayment because the underlying "suit only alleged fraud."  Id.  While the court agreed that "contracts that would indemnify a party for intentional or fraudulent conduct are void as against public policy in New York, [plaintiff] was never found liable for fraud;" the underlying action was dismissed on summary judgment.  Id. at *2.  The court noted that

> [i]n the context of liability insurance, New York courts have held that so long as the indemnity contract's terms would apply to intentional conduct, an indemnified party is entitled to legal defense fees in cases alleging intentional or fraudulent wrongdoing until the indemnified party is found by the finder of fact to have acted intentionally or fraudulently.

Id.  Thus, the court held that defendant breached the contract when it refused plaintiff's tender of the underlying action

8

because the contract's terms applied to the claims in the underlying action and plaintiff was "never found liable of intentional misconduct and was never assessed punitive damages." Id.  As in CBS Corp., hereto the parties do not dispute that the Indemnity Agreement applies to the claims in the main action and the trier of fact has not yet determined the merits.

WGM's reliance on Honig to support its proposition that allegations of intentional conduct are enough for courts to void an indemnification clause as violative of public policy is misplaced.  See Honig v. Riot Blockchain, Inc., 20 Civ. 2808 (NRB), 2020 WL 6825695, at *3 (S.D.N.Y. Nov. 20, 2020).  In Honig, defendant moved to dismiss plaintiffs' amended complaint for breach of contract because the indemnification clause "exclude[d] indemnification for costs arising from defending actions 'based upon alleged securities violations and fraudulent acts.'"  Id. at *3.  Plaintiffs argued that because no determination "ha[d] been made either way as to [plaintiffs'] wrongdoing," plaintiffs were entitled to advancement of legal costs.  Id.  Although the court noted that New York courts will not void an indemnity agreement "in the absence of a judgment of intentional conduct," the court granted defendant's motion to dismiss because "plaintiffs offer[ed] no compelling reason why [the court] should imply a term that requires advancement when such intentional conduct is alleged."  Id. at *4; see also

9

Gibbs-Alfano, 281 F.3d at 21 (noting that the Court of Appeals did not find a case "where a New York court declined to enforce an otherwise valid indemnification agreement between parties where the party seeking indemnification settled, without admitting liability, claims against it alleging intentional wrongdoing").

WGM argues that, like in Honig, the Court can determine when WGM's indemnification obligation occurs on its motion to dismiss by interpreting the language of the Indemnity Agreement. (See WGM Reply Br. at 6-7.)  However, unlike in Honig, ADP does not seek advancement of legal costs from WGM;[7] thus, the Court need not interpret the language of the Indemnity Agreement and determine WGM's indemnification obligations on its Rule 12(b)(6) motion.  Rather, following the precedent of CBS Corp., Gibbs-Alfano, and Honig, the Court will not void the Indemnity Agreement in the absence of a judgment of intentional conduct. Although ADP seeks a declaratory judgment that "WGM is obligated to defend, indemnify and hold Third-Party Plaintiffs harmless from FSI's claims in the main action and that WGM is obligated to reimburse Third-Party Plaintiffs for the costs . . . that

---

[7] ADP seeks reimbursement from WGM "for the costs, expenses and attorneys' fees Third-Party Plaintiffs incurred and may incur in the future in the defense of the main action." (Am. Compl. ¶ 38.)  The damages amount is "to be determined at trial plus interest." (Id. ¶ 42.)

Third-Party Plaintiffs incur in defense of the main action," ADP's claim for contractual indemnification is dependent on "the event [that] Plaintiff obtains verdict or judgment against Defendants/Third-Party Plaintiffs in the main action."  (Am. Compl. ¶¶ 45, 48.)  Accordingly, the trier of fact will determine whether ADP engaged in intentional conduct and whether WGM must reimburse ADP for the costs of defending against FSI in the main action.

The Court finds that ADP adequately states a claim for breach of contract.  To state a claim in federal court for breach of contract under New York law, the complaint "need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages."  Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996); see also Johnson v. Nextel Commc'ns, Inc., 660 F.3d 131, 142 (2d Cir. 2011).  ADP has adequately plead each element.

Accepting the allegations in the Amended Complaint as true, ADP and WGM entered into the Indemnity Agreement on November 16, 2017, wherein WGM agreed to indemnify ADP "from and against any and all causes of action . . . which may at any time be asserted by FSI Architecture ('FSI') against ADP in connection with ADP's use of reproductions of FSI's drawings and plans in connection with" ADP's work for WGM.  (Am. Compl. ¶¶ 19-20.)  ADP used

11

FSI's Materials in providing architectural services for WGM as set forth in the Indemnity Agreement. (See id. ¶¶ 18-20.) On April 15, 2020, ADP "tendered the defense and indemnification of the main action pursuant to the Indemnity Agreement to WGM." (Id. ¶ 34; see also Am. Compl. Ex. A.) ADP alleges that WGM breached the Indemnity Agreement because WGM has "not undertaken the defense of the main action or indemnified" ADP for fees incurred in defense of the main action. (Id. ¶ 36.) As stated above, FSI's allegations of intentional copyright are insufficient, at this stage, to void the Indemnity Agreement. The Court pauses to note that at this stage, it need not reach an opinion regarding the enforceability of the Indemnity Agreement. Accordingly, WGM's motion to dismiss ADP's Amended Complaint is denied.

        b. **Acheson's Standing**

Having addressed its enforceability, the Court now determines the intended beneficiaries of the Indemnity Agreement. The parties dispute whether Acheson is an intended third-party beneficiary of the Indemnity Agreement. WGM argues that the Court should dismiss Acheson's claims against WGM because Acheson is not a party to the Indemnity Agreement. (See WGM Br. at 3-4.) WGM contends that the "fact that [the] indemnification clause on its face omits reference to Acheson or any other third-party beneficiary should be construed to avoid

12

imputing an obligation on WGM that it did not intend to assume." (WGM Reply Br. at 4.)  ADP claims that despite Acheson's not being a party to the Indemnity Agreement, Acheson is entitled to enforce the Indemnity Agreement against WGM as a third-party beneficiary.  (See Pls. Opp. at 17-18.)

"Under New York law, a third party may enforce a contract when 'recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and . . . the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.'" Bayerische Landesbank, N.Y. Branch v. Aladdin Cap. Mgmt. LLC, 692 F.3d 42, 53 (2d Cir. 2012) (quoting Levin v. Tiber Holding Corp., 277 F.3d 243, 248 (2d Cir. 2002)).  "A third party is an intended beneficiary where either (1) no one other than the third party can recover if the promisor breaches the contract or (2) the language of the contract otherwise clearly evidences an intent to permit enforcement by the third party." Phoenix Ancient Art, S.A. v. J. Paul Getty Tr., No. 17 Civ. 241 (ER), 2018 WL 1605985, at *10 (S.D.N.Y. Mar. 29, 2018) (citation omitted).  "Although a third party need not be specifically mentioned in the contract before third-party beneficiary status is found, New York law requires that the parties' intent to benefit a third party must be shown on the face of the agreement.  Absent such intent, the third party is merely an

13

incidental beneficiary with no right to enforce the contract." In re Gulf Oil/Cities Serv. Tender Offer Litig., 725 F. Supp. 712, 733 (S.D.N.Y. 1989) (citations omitted).  In identifying the parties' intent, "a court 'should consider the circumstances surrounding the transaction as well as the actual language of the contract.'"  Bayerische Landesbank, 692 F.3d at 52 (quoting Subaru Distribs. Corp. v. Subaru of Am., Inc., 425 F.3d 119, 124 (2d Cir. 2005)).

Construing the pleadings liberally, the Court finds that ADP has sufficiently alleged that WGM intended that ADP's individual licensed architects, including Acheson, receive protection under the Indemnity Agreement, granting Acheson third-party beneficiary status.  ADP alleges that as part of the Indemnity Agreement, WGM agreed to "defend and indemnify in connection with, inter alia, FSI's claims for copyright infringement in connection with 'use of reproductions' of the Materials."  (Pls. Opp. at 18 (quoting Am. Compl. Ex. B).)  ADP contends that indemnifying against FSI's claims for "use of reproductions" covers "claims for 'use' by ADP's individual licensed architects who were performing the architectural services and would be the ones specifically making any such 'use' for ADP." (Am. Compl. ¶ 51 (quoting Am. Compl. Ex. B).) Accepting ADP's allegations as true that only ADP's licensed professionals, including Acheson, could file certain documents

with the DOB and/or the LPC—such as reproductions of the Materials—it is reasonable to infer that WGM could only realize the benefit of the promised performance if ADP's licensed architects filed the Materials with the DOB.  (See Pls. Opp. at 18-19.)  Accordingly, WGM's motion to dismiss Acheson's claims against WGM is denied.

## IV. Conclusion

For the foregoing reasons, the motion to dismiss [dkt. no. 39] is DENIED.  The Clerk of the Court shall close the open motion.  Counsel shall confer and submit a proposed discovery plan no later than February 2, 2022.

**SO ORDERED.**

Dated:     January 19, 2022
           New York, New York

*Loretta A. Preska*
_____
LORETTA A. PRESKA
Senior United States District Judge